**UNITED STATES of America, Appellee,**

v.

**UNITED FOAM CORPORATION, Appellant.**

**Nos. 77–1048, 77–1438, 77–1688.**

United States Court of Appeals, Ninth Circuit.

Nov. 30, 1977.

564

Richard C. Leonard (argued), Beverly Hills, Cal., for appellant.

William D. Coston (argued), Dept. of Justice, Washington, D.C., for appellee.

Before TRASK and GOODWIN, Circuit Judges, and SOLOMON,* District Judge.

* The Honorable Gus J. Solomon, United States District Judge for the District of Oregon, sitting by designation.

GOODWIN, Circuit Judge:

United Foam appeals from three trust orders entered after it failed to divest itself of its Compton, California, plant within the two years allowed by an antitrust consent decree.

United Foam argues that the orders constitute significant modifications of the consent decree and thus could only be entered after a full evidentiary hearing. Appellant also challenges the fees the district court allowed the trustee under the trust orders. We affirm the district court's interlocutory trust orders, but do not reach the fee issue at this time.

United Foam asserts that the consent decree required it to divest only the physical assets of the Compton plant, while the trust orders require it to sell a going business including plant, customer lists, work in progress, and good will. Thus, it argues, the trust orders require United Foam to sell a going business with valuable intangible assets, a significant departure from the consent decree. United Foam then concludes that the lack of an evidentiary hearing defeats the trust orders. The problems with this argument become clear through an analysis of the proceedings in this case.

While the consent decree ordered the divestiture of the real property, physical plant, and equipment used in the Compton plant, the purpose of the divestiture was to create a strong new competitive manufacturer of flexible urethane foam. The decree also required United Foam to give all prospective purchasers information "regarding the business to be divested" and required the purchaser to represent its intention to "continue the business of the Compton, California facility for manufacturing and processing flexible urethane foam". The decree required United Foam before divestiture to "take no action to impair the viability of the business to be divested" and to "use its best efforts in operating and promoting the business to be divested". United Foam did not have to divest its entire Compton-related business, but it did have to maintain the Compton business in a condition that would permit a

purchaser of the plant to engage in a viable competitive effort.

■ While the consent decree gave United two years to accomplish the divestiture, three years passed before the trustee's appointment. During those years United Foam did more to frustrate the divestiture than to promote it. It advertized the sale only once a year (a total of three times). The brochure United Foam distributed to "promote" the sale overvalued the buildings and equipment. The brochure raised questions about the availability of a long-term lease if the purchaser chose not to purchase the plant site from United Foam's president. Despite the unequivocal obligation upon United Foam to divest, it declared that the price was "non-negotiable". It encumbered the plant's equipment and changed the nature of its production. It reduced the plant's profitability. While the above described activities were under way, United Foam moved to modify the consent decree to eliminate the obligation to divest. United Foam's behavior thus afforded the court ample grounds for deciding that the time had come to appoint a trustee pursuant to ¶ IV(I) of the consent decree.

The court issued Trust Orders 1 and 2 after a hearing on United Foam's motion to modify the consent decree. It concluded from the evidence that "United's efforts to sell and the terms of sale do not indicate that the sale of the Compton plant is impossible." On the basis of this finding (which was based on evidence presented at a hearing at which United knew that the appointment of a trustee was an issue), the court later issued the challenged trust orders. Trust Orders 1 and 2 essentially empower the trustee to analyze the nature of the Compton plant's business and to determine the best terms to attract a purchaser. The trust orders may emphasize the sale of a going business rather than of the physical assets and thus alter the thrust of the consent decree, but they remain true to its purpose and to much of its wording. The purpose of the decree was to establish a new and viable competitor in the flexible-urethane-foam market, and the decree em-

phasizes preserving the vitality of "the business to be divested".

■ The trust orders do not represent such a substantial modification that, under the doctrine of *Hughes v. United States*, 342 U.S. 353, 72 S.Ct. 306, 96 L.Ed. 394 (1952), further evidentiary hearings were necessary. In *Hughes* the modification was to require the sale of stock originally placed in a voting trust in lieu of being sold; here the alteration is simply in the extent of a divestiture to which United Foam previously consented. United Foam had three years to make the divestiture before the trustee's appointment. Failure to divest indicated that the decree's purpose required new measures. United Foam's failure to fulfill its obligation under the decree to "take no action to impair the viability of the business to be divested" makes the trust orders necessary extensions of the consent decree; their new provisions simply respond to United Foam's derelictions.

■ Trust Order 3 places added restrictions on United's actions and gives the trustee additional powers of sale. In the light of United Foam's continued foot dragging, as shown by the record, this order was appropriate. Some of the relief was authorized by the consent decree and the rest was within a permissible modification of the decree in order to carry out its purposes.

United Foam now has to divest itself of an operating unit rather than simply of an empty plant, but that result flows from United Foam's machinations. Had it acted in good faith from the beginning, an orderly divestiture might well have occurred some time ago and the Compton plant would now be in the hands of a competitor. United Foam has gained the benefit of its delay. Reasonable detriment may now be the price to be paid.

■ United Foam's objection to the possible noncompetition provision is frivolous. The provision will not force United Foam to stop competing in the relevant market; it will simply prevent it from hiring the Compton plant's employees or taking its customers for two years. There are many other potential employees and customers in the area, and United Foam has not shown itself lax in pursuing them.

■ United Foam and the trustee argue at some length about the reasonableness of the trustee's fees. The best time to review those fees will be when the trusteeship ends. United Foam can assist in bringing about the state of facts which will permit the termination. If the final accounting shows that the trustee has been overpaid, it can reimburse the excess. If United Foam is not satisfied with the fee as finally determined, it can raise that issue, together with others that might arise, upon a new appeal. We defer resolution of the question until it is before us upon an appeal from a final judgment.

The trust orders challenged in this appeal are in all respects affirmed, saving only the question of fees for later review.

Affirmed.