WILLIAM J. CAMPBELL, Senior District Judge:
 

 United Foam Corporation appeals from the entry of two trust orders in the District Court in connection with the divestiture of its Compton, California facility. That divestiture is the result of a consent decree entered in settlement of a civil antitrust complaint filed by the United States against United Foam in 1972.
 
 [1]
 
 In the consent decree United Foam agreed to divest itself of the Compton facility within 24 months. In May, 1975, the divestiture had not been accomplished, and the District Court appointed Somerset Management Group as trustee of the Compton plant. The trustee was instructed to sell the assets of the Compton facility, and to manage it in the interim.
 

 In November of 1977 a plan for divestiture was submitted to the District Court, with a sale price of $415,000. The Court confirmed the sale at that price. In a separate order the District Court also awarded the trustee compensation in the amount of $234,715, and $65,725 in attorneys’ fees. Those orders are the subject of this appeal.
 

 United Foam contends that the District Court abused its discretion in compensating the trustee at a rate of $115 per hour and the trustee’s attorneys at a rate of $135 per hour. United Foam also contends that the sale price of $415,000 was unreasonably low. Both Somerset Management Group and the United States argue the awards are reasonable and should be affirmed. The government argues in favor of affirmance in order to assure that trustees and their attorneys receive sufficient compensation to attract able professionals to effectuate the public interest, as defined by our antitrust laws. We believe the District Court did not abuse its discretion, and affirm both orders.
 

 The history of this case demonstrates the formidable nature of the trustee’s task. Three years after the entry of the consent decree United Foam had made little progress toward divestiture of the Compton plant. The Court, pursuant to the terms of the original consent decree, appointed the trustee to accomplish the divestiture. United Foam appealed that order to this Court. In 1977 this Court affirmed the appointment of the trustee in an opinion published at 565 F.2d 563 (9th Cir. 1977). The Court at that juncture noted that United Foam had done “more to frustrate the divestiture than promote it.” The ways United Foam had frustrated a potential sale included overvaluation of the plant’s assets; raising concerns about the availability of a long term lease on the plant site; and an unwillingness to negotiate the sale price. 565 F.2d at 565.
 

 In addition to securing the sale of the Compton facility, the trustees also made the Compton plant profitable. The facility was losing money at the time management was turned over to the trustee. The plant’s net earnings during the first thirteen months of interim trustee management, however, exceeded $200,000. This increase in profitability undoubtedly facilitated the sale and resulted in a higher sale price. It should also be noted that United Foam was the beneficiary of the trustee’s successful management prior to divestiture.
 

 In support of the argument that the hourly fees are excessive, appellant points to cases involving fees for trustees in bankruptcy, e. g.,
 
 York International Building, Inc.
 
 v.
 
 Chaney,
 
 527 F.2d 1061 (9th Cir. 1975). Were this a bankruptcy case, the rates in question would probably be considered excessive. The instant case, however, does not involve the same financial considerations as a bankruptcy proceeding. A trustee in bankruptcy is under an obligation to preserve the assets of the bankrupt
 
 *580
 
 for the protection of creditors. Accordingly, the trustees’ fees generally reflect a spirit of economy. The antitrust divestiture is a different matter. The public interest is best served by a prompt sale, together with efficient management in the interim. In order to achieve that result, it may be necessary to compensate trustees and their attorneys at the existing market rate for their professional services.
 

 Appellant claims the hourly rates charged are excessive even under normal market conditions. A rate of $115 per hour, assuming a work year of 1,800 hours, would yield an annual income of $207,000. However, such calculations fail to take into account fixed costs of doing business, which were, in fact, absorbed by the trustee in this case. Those costs include office space, secretarial help, insurance and other expenses ordinarily incurred in the course of doing business. Once the trustees’ fees are adjusted to reflect those costs, the hourly rate is significantly lower.
 

 United Foam also challenges the compensation to the trustee for driving time at the same $115 per hour rate. The record is unclear as to the precise amount of compensated driving time during the nearly two-year period of management by the trustee. There was testimony to the effect that 100 hours of driving time were compensated at the $115 rate. Appellant argues that 200 hours is a more accurate figure, yet there is no proof of that figure in the record. This driving time resulted from one member of the management company having to drive approximately ninety miles to the Compton facility. We view the compensation of a portion of the trustee’s driving time at the $115 rate to be insubstantial in light of the two thousand plus hours of compensated time.
 

 In addition to questioning the reasonableness of the compensation to the trustee and its attorneys, United Foam urges this Court to engage in its own independent evaluation of the award. The United States and the trustee contend the compensation should be affirmed absent a finding of an abuse of discretion. Appellants, while recognizing the general applicability of- that standard of review, argue that the District Court’s failure to rely on some established criteria in arriving at the compensation awards requires this Court to make a
 
 de novo
 
 determination as to reasonable fees. Appellant relies principally on the case of
 
 United States v. Larchwood Gardens, Inc.,
 
 404 F.2d 1108 (3rd Cir. 1968). In that case the appellate court was faced with a compensation award for a receivership which not only failed to state the criteria or analysis upon which it was based, but failed to include even a summary of the
 
 time
 
 spent. The Court had no choice but to engage in its own analysis of the receiver’s fees. Here, the District Court, after reviewing memoranda from both parties and conducting an evidentiary hearing, concluded that the fees requested were “reasonable . for the services rendered.” We believe that determination should only be overturned on a finding of an abuse of discretion.
 
 See e. g. Official Creditors’ Committee of Fox Markets, Inc. v. Ely,
 
 337 F.2d 461, 470 (9th Cir. 1964). We believe that the District Court did not abuse its discretion in approving the requested compensation. Yet even if we accept appellant’s assertion that we must look beyond the District Court’s determination, our independent review of this lengthy record reaffirms that conclusion. Given the successful nature of the
 
 interim
 
 management, the reasonable sale price achieved, and the complete lack of cooperation from United Foam,
 
 [2]
 
 the compensation is reasonable.
 

 Appellant’s contention that the sale price of $415,000 is inadequate is also not persuasive. At the hearing before the District Court numerous methods of appraisal were considered. First, the plant’s average net earnings for 1971 through 1975 were multiplied by a price earnings factor of 6.
 
 *581
 
 Net earnings for that period averaged $50,-000 per year. Thus, this method produced a value of $300,000. From that figure, working capital necessary to operate the plant was deducted. That figure was set at $125,000, leaving a purchase value of $175,-000. The second method was to use 1977 net earnings which were $122,500 rather than the five-year average. Using a multiplier of six and, again, deducting $125,000 for working capital, a net value of $500,000 was arrived at. Third, book value was considered. That figure was $96,000. Fourth, an appraisal done for United Foam which assigned a $230,000 liquidation value was considered. Finally, an appraisal reflecting “value in use” of Compton’s assets set the value at $500,000. After summarizing these various methods, the trustee concluded that an appropriate price for the business without accounts receivables or inventories was in the four to five hundred thousand dollar range.
 

 Appellant also introduced expert testimony to the effect that a reasonable price would have been in the six to eight hundred thousand dollar range. Appellant’s contention that the $415,000 sale price was not reasonable is based solely on that expert testimony.
 

 In light of the earnings history of United Foam over the five year period, the range of values considered, the depreciated nature of the equipment sold, and the fact that the purchaser was buying a plant located on land owned by a competitor — United Foam — we do not believe the confirmation of a $415,000 sale price was an abuse of discretion. We affirm the District Court’s Order confirming the sale.
 

 AFFIRMED.
 

 [1]
 

 . The government alleged that United Foam’s 1971 acquisition of the Stauffer Chemical Company’s urethane foam facility at Compton, California violated Section 7 of the Clayton Act, 15 U.S.C. § 18.
 

 [2]
 

 . We point to appellant’s lack of cooperation not out of a desire to punish it for its conduct, but simply because that lack of cooperation rendered the trustee’s task more arduous, and therefore, more expensive.