**UNITED STATES of America, Plaintiff,**

v.

**LOUISIANA–PACIFIC CORPORATION, Defendant.**

**Civ. No. 81–813–RE.**

United States District Court,
D. Oregon.

May 3, 1983.

See also D.C., 554 F.Supp. 501, 554 F.Supp. 504.

---

Charles H. Turner, U.S. Atty., Jack G. Collins, Asst. U.S. Atty., Portland, Or., Benjamin P. Schoen, Consumer Affairs Section Antitrust Div., Dept. of Justice, Washington, D.C., for plaintiff.

Clifford N. Carlsen, Jr., Miller, Nash, Yerke, Wiener & Hager, Portland, Or., for defendant.

## OPINION

REDDEN, Judge:

The present motions are the latest stage in a controversy which is more fully discussed in *United States v. Louisiana-Pacific Corp.*, 554 F.Supp. 501 and 554 F.Supp. 504 (D.Or.1982). Only a brief review of the controversy is provided here to give a context for my rulings.

In 1978, Louisiana-Pacific Corp. (hereafter L–P) sought to acquire Fibreboard Corporation. The Federal Trade Commission (FTC) investigated the merger for possible anticompetitive effects. The FTC and L–P reached an agreement to settle their differences with regard to the pending merger; the enforcement of that agreement is the issue in this case. Under the terms of the agreement, the FTC agreed to drop its objections to L–P's acquisition of Fibreboard, and L–P agreed to divest one of Fibreboard's assets, a plant in Rocklin, California, within two years.

L–P did not divest the plant. The United States brought this action seeking a civil penalty for L–P's delay in divestiture, and an order appointing a trustee to accomplish divestiture under the supervision of the Court and the FTC. In November 1982, as the civil penalty phase of proceedings was about to go to trial, L–P announced an agreement with Roseburg Lumber (Roseburg), by the terms of which Roseburg would acquire Rocklin for fifteen million dollars, subject to the FTC's right under the consent agreement with L–P to approve or disapprove the sale. I ruled that the appropriate penalty for L–P's delay of divestiture

was a fine of $4 million, and I delayed action on the appointment of a trustee pending the FTC's decision to approve or disapprove L–P's proposed sale to Roseburg. 554 F.Supp. 512.

On April 12, 1983, the FTC ruled on the proposed divestiture. The FTC pointed to the possibility that sale of Rocklin to Roseburg would have possible anti-competitive effects on the timber industry of the Northwest. The FTC declined to approve the sale of Rocklin to Roseburg,[1] and suggested that a trustee be appointed for the purpose of seeking out other offers which would have more pro-competitive potential.

The FTC then renewed its efforts in this Court for the appointment of a trustee to pursue divestiture. Roseburg also moves to intervene in these proceedings, seeking, apparently, to defend its bid for Rocklin.

## MOTION FOR THE APPOINTMENT OF A TRUSTEE TO PURSUE DIVESTITURE

The FTC argues that L–P's previous inability to mount a successful good-faith effort to sell Rocklin, *see* 554 F.Supp. 508–510, indicates that a court-appointed trustee is warranted to pursue divestiture. I agree with the FTC and appoint such a trustee.

Such a remedy is not unprecedented, and is consistent with the broad equitable powers of the federal courts to appoint independent experts or masters in special or extraordinary circumstances. In *United States v. Iowa Beef Processors,* 1974–1 Trade Cas. (CCH), ¶ 75,014 (N.D.Iowa 1974), Judge Hanson appointed such a trustee to pursue divestiture in a case similar to this one. The Ninth Circuit has repeatedly indicated that the discretionary power of the federal courts in such cases is broad. *See, e.g., United States v. United Foam Corp.,* 565 F.2d 563, 565–566 (9th Cir.1977); *see also FTC v. Singer,* 668 F.2d 1107, 1110–1113 (9th Cir.1982). I rely also on the inherent and unquestioned authority of the federal courts to appoint expert advisors, *see, e.g., Danville Tobacco Assn. v. Bryant-Buckner*

---

1. The FTC did not, however, conclusively reject Roseburg's bid. The FTC directed that Roseburg could submit its bid to a court-appointed trustee, and that this bid would be re-considered by the FTC in the context of other offers gathered by the trustee.

*Assoc.,* 333 F.2d 202, 208–209 (4th Cir.1964), *cert. denied,* 387 U.S. 907, 87 S.Ct. 1688, 18 L.Ed.2d 624 (1967); *Scott v. Spanjer Bros.,* 298 F.2d 928, 930 (2nd Cir.1962). I also rely upon the spirit, though not the specific language of, Fed.R.Civ.P. 53. Of course, the trustee is not a "master" in the sense of Rule 53, since he or she will not take testimony, make findings of fact, or perform other judicial functions, *see Danville Tobacco Assn., supra* at 208, and therefore the specific safeguards and guidelines of Rule 53 are inapplicable. However, I rely on the spirit of Rule 53 to the extent that it allows a Court to appoint independent advisors and experts to assist it in granting relief. As Judge Goodwin noted in *United Foam, supra,* a consent decree for divestiture such as this one in suit will often require extensive federal court supervision beyond the immediate terms of the consent decree, "... in order to carry out its purposes." 565 F.2d 565–566. Especially is this true where a history of noncompliance with the divestiture order has been demonstrated. *Id.; see United States v. Louisiana-Pacific, supra,* at 554 F.Supp. 508–510.[2]

I also find that the appointment of a trustee will protect the interests of L–P. During the period when an impartial expert is pursuing divestiture, L–P is protected against further civil penalties of $10,000 per day for its failure to divest Rocklin, *see* 15 U.S.C. § 45(*1*).[3] In light of L–P's inability to mount a good faith effort to date, I believe that this protection for L–P will be beneficial and will best reconcile the private interest of L–P in securing the best possible price for the plant with the public interest of achieving an appropriate divestiture.

I turn now to the mechanics of selection of the trustee. The trustee would ideally be a person knowledgeable and informed concerning the acquisition and sale of large industrial plants, and especially a person with knowledge and experience in the forest products field. The trustee should not be an employee of the Federal Trade Commission or other government agency, nor of L–P, in order to insure impartiality. I suggest to L–P and the government that the best alternative would be for them to agree to a person fitting these *desiderata.* If the parties cannot agree, the Court will of course be forced to make a decision. I direct that L–P shall contact the government's attorney, Mr. Schoen, and seek to achieve agreement on a trustee. If agreement cannot be reached within twenty days, the government and L–P shall each forward to the Court, within twenty days of the date of this Opinion, the name of a proposed trustee and a brief description of his or her qualifications and experience. The Court will then appoint the trustee. During the interim period of course L–P should continue to generate information which can be forwarded to the trustee, such as the names of prospective buyers, their qualifications and ownership of other similar plants in similar markets, and the terms of any proposed offer. This will insure the most expeditious and satisfactory payment to L–P for the plant.

The trustee shall have the duties and responsibilities described in the government's proposed Order of Appointment of

---

**2.** The consent decree in *United Foam* apparently specifically provided for the appointment of a trustee, unlike the consent decree in the present case. The Ninth Circuit in *United Foam* indicated that substantial modification of the consent decree, in order to accomplish a more extensive divestiture than originally provided for, was within the discretion of the district court in light of the defendant's minimal attempts at divestiture. In this case, by contrast, the appointment of a trustee will not affect L–P's substantive rights at all, and the trustee will merely assist the Court and the FTC in collecting information relative to the divestiture effort. The FTC by virtue of its right under the consent decree to approve or disapprove a particular offer for the plant from a particular buyer, and the Court, through its inherent supervisory powers, retain full control over the ultimate divestiture decision. I therefore find that the appointment of a trustee is an appropriate remedy, *see Iowa Beef Processors, supra; Reed v. Cleveland Board of Education,* 607 F.2d 737, 740–744, 748 and note 1 (6th Cir.1979). The exceptional circumstances of the case warrant such an appointment.

**3.** This, of course, assumes L–P's good faith efforts to assist and cooperate with the trustee, the plaintiff and the Court.

Trustee, and the Court will sign that Order or a similar one upon the appointment of the trustee. The trustee shall be compensated with a reasonable contingent fee as determined in the government's proposed Order and at the expense of defendant L–P, with however the following proviso: that it is the intention of the Court to reduce the $4 million penalty previously assessed against L–P in an amount equal to the trustee's compensation, if the trustee achieves a successful divestiture and L–P has in fact cooperated with the trustee in bringing about such divestiture.[4]

---

4. Normally the trustee would be compensated at the expense of the defendant *in addition to* the penalty assessed. However, in the circumstances of this case payment from the "fund" generated from the civil penalty proceedings is appropriate, in that such compensation will still be at the expense of the defendant and the trustee shall pursue the interests both of the public and of the private litigants. Of course, I retain the power to increase the civil penalty, *see* note 3, *supra*. It is possible that the trustee will be due compensation prior to payment of the fine. L–P shall pay said trustee. If L–P obtains relief from payment of the fine, or the fine is reduced to an amount less than the fee, L–P has the obligation of payment of the fee *in* full.