**Ralph W. KEITH, Esther May Keith, Harold E. Grady, Edith W. Grady, James B. Gillespie, Helen Gillespie, National Association for the Advancement of Colored People, the Sierra Club, Environmental Defense Fund, Inc. and Freeway Fighters, Plaintiffs-Appellees,**

v.

**John A. VOLPE, Sheridan A. Farin, Donald E. Trull, California Highway Commission, California Department of Public Works, James A. Moe and Robert Datel, Defendants-Appellants.**

No. 84–6508.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 4, 1986.

Decided March 20, 1986.

---

See also, D.C., 618 F.Supp. 1132.

John Phillips, Center for Law in Public Interest, Los Angeles, Cal., for plaintiffs-appellees.

Frederick Graebe, Sacramento, Cal., for defendants-appellants.

Before FLETCHER, FERGUSON and NELSON, Circuit Judges.

FLETCHER, Circuit Judge:

The California Department of Transportation (Caltrans) appeals an order interpreting and modifying an amended consent decree that settled from litigation concerning the construction of the Century Freeway in Los Angeles. The order establishes procedures for removal and replacement of members of the Century Freeway Affirmative Action Committee, an advisory body set up by the consent decree to monitor compliance with the affirmative action goals set out in the decree. We affirm.

## BACKGROUND

In 1972, appellees, who include several individuals residing in the path of the proposed freeway, the Los Angeles Chapter of the NAACP, the Sierra Club and the Environmental Defense Fund, brought suit against the United States Department of Transportation, the State of California, Caltrans, and several state and federal highway and transportation officials. They alleged that the proposed freeway project failed to comply with various statutes [1] and with the fifth and fourteenth amendments. The district court enjoined all activities in furtherance of construction of the freeway

---

**1.** The National Environmental Policy Act of 1969, the California Environmental Quality Act of 1970, the Urban Mass Transportation Act of 1964, the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, and the Federal-Aid Highway Act.

until defendants complied with applicable statutory requirements.

Over the next several years, the parties worked out agreements on details of the freeway construction and related transportation, housing and employment matters. These agreements were incorporated into a consent decree signed by the district court, filed in 1979, and amended in 1981. The decree gives the trial court the power to modify its terms on motion of any party.

Exhibit C of the consent decree sets forth an employment and business plan of affirmative action for the benefit of the communities located in the path of the freeway, and for the benefit of women and minorities. The plan established the Century Freeway Affirmative Action Committee (CFAAC). CFAAC has seven members. Seven different entities each were given power to appoint to CFAAC "an individual who has three or more years' experience working on the implementation of plans for equal employment and/or minority business enterprises." The seven appointing entities are the Caltrans Civil Rights Division, the Federal Highway Administration (FHWA) Civil Rights Division, the Board of Supervisors of the County of Los Angeles, the L.A. Branch of the NAACP, the National Organization of Women, the Mexican-American Opportunity Foundation and the Governor of California.

The duties and responsibilities of CFAAC are enumerated in the decree. CFAAC reviews bids and contracts for compliance with affirmative action criteria. It reviews each contractor's performance, receives complaints, conducts on-site inspections and interviews, and, if warranted, petitions the Director of Caltrans for sanctions. CFAAC helps locate and recruit employees, contractors, and subcontractors in order to achieve the affirmative action goals of the decree. Finally, CFAAC can request amendments to the decree.

CFAAC was constituted in 1979. Between 1979 and 1984, there were several changes in the membership of the committee. In February 1984, Caltrans Civil Rights Division and the Governor of California replaced their designees. This was the first time that a change was perceived as an involuntary replacement; earlier replacements apparently had been perceived as being precipitated by voluntary resignations.

Appellees moved for an order interpreting the consent decree as appointing CFAAC members for the life of the project. Their proposed order "establishes" a procedure for replacing committee members. Caltrans objected, arguing that because CFAAC was a representative body, to insure adequate representation, the appointing entities must have power to replace their representatives. It claimed that its position was already embodied in the decree. Appellees argued that CFAAC was a watchdog committee and in order to keep it free from political pressure, its members had to serve for the life of the project.

The court found that the decree was silent as to mechanisms for removal and replacement of CFAAC members. It modified the decree to increase the size of CFAAC from seven to nine members, the two additional members to be appointed by the court. The court then appointed to the two new positions the former CFAAC members whose removal was contested. The court also modified the decree to specify how CFAAC members may be removed. Members appointed by Caltrans, FHWA and the Governor of California will serve at the pleasure of their respective appointing entities; other members are removable only for cause after notice and hearing before the court. Vacancies that arise from causes other than removal will be filled by the initial appointing entity.

## DISCUSSION

### I. *The Decision to Modify the Consent Decree*

■ We review modifications of consent decrees for abuse of discretion. *United States v. Oregon*, 769 F.2d 1410, 1416 (9th Cir.1985); *Washington v. Penwell*, 700 F.2d 570, 575 (9th Cir.1983). Relying on *United States v. Swift & Co.*, 286 U.S. 106,

52 S.Ct. 460, 76 L.Ed. 999 (1932), and its progeny, Caltrans claims that a consent decree cannot be modified absent a showing of exceptional circumstances.

The Supreme Court said in *Swift* that [n]othing less than a clear showing of grievous wrong...should lead us to change what was decreed after years of litigation with the consent of all concerned.

286 U.S. at 119, 52 S.Ct. at 464. However, later decisions have made clear that this admonition must be read in the context of the factual background in *Swift. See United States v. United Shoe Machinery Corp.*, 391 U.S. 244, 248, 88 S.Ct. 1496, 1499, 20 L.Ed.2d 562 (1968); *New York State Association for Retarded Children v. Carey*, 706 F.2d 956, 969 (2d Cir.), *cert. denied*, 464 U.S. 915, 104 S.Ct. 277, 78 L.Ed.2d 257 (1983). In *Swift*, defendant meat-packers requested modifications which would allow them to engage in practices enjoined by the consent decree they had signed a decade earlier. *See* 286 U.S. at 112-13, 52 S.Ct. at 461. The Court acknowledged the power to modify the decree "as events may shape the needs," *id.* at 114, 52 S.Ct. at 462, but found that the situation had not changed sufficiently in the decade since the agreement was signed to alter the potential for antitrust violations that had led to the underlying litigation. *Id.* at 116-19, 52 S.Ct. at 463-64.

*Swift* involved a proposal by defendants to make changes in the decree for their own benefit, that would have altered significantly their obligations. *See United Shoe Machinery*, 391 U.S. at 248, 88 S.Ct. at 1499. Courts have not applied the strict *Swift* standard to modifications that alter the parties' obligations when experience with a consent decree reveals problems with its administration. The Second Circuit has said that a court can alter a consent judgment "where a better appreciation of the facts in light of experience indicates that the decree is not properly adapted to accomplishing its purposes." *King-Seeley Thermos Co. v. Aladdin Industries*, 418 F.2d 31, 35 (2d Cir.1969). Such flexibility is essential to the administration of compre-

hensive decrees arising out of complex litigation. Courts have allowed modifications that retain the essential features and further the primary goals of such decrees while taking into account what is realistically achievable by the parties. *See Carey*, 706 F.2d at 969-71; *Philadelphia Welfare Rights Organization v. Shapp*, 602 F.2d 1114, 1120-21 (3d Cir.1979), *cert. denied*, 444 U.S. 1026, 100 S.Ct. 689, 62 L.Ed.2d 660 (1980). Thus, as the Seventh Circuit recently noted, "a component of the modern standard for modification of a consent decree" is that it may be altered "if experience with [its] administration ... shows the need for modification." *Donovan v. Robbins*, 752 F.2d 1170, 1182 (7th Cir.1985). This modern standard obviously leaves the administering court a great deal of discretion even to alter the substantive rights of the parties.

The modification at issue here fleshed out a decree that was silent on a procedural point. When a decree is silent on a substantive issue, courts are reluctant to impose additional burdens, because the parties could have bargained for and included an absent provision if they had so desired. *See United States v. Armour & Co.*, 402 U.S. 673, 680-83, 91 S.Ct. 1752, 1756-58, 29 L.Ed.2d 256 (1971); *Fox v. United States Department of Housing & Urban Development*, 680 F.2d 315, 323 (3d Cir.1982). Where a procedural provision is missing, however, the considerations are entirely different.

When a dispute developed over the right to replace CFAAC members, some resolution of the issue was necessary for CFAAC's continued functioning. The court, finding that the decree did not resolve the issue, modified the decree to spell out the missing procedures. In an analogous case, *United States v. United Foam Corp.*, 565 F.2d 563 (9th Cir.1977), we approved a modification to a consent decree that had given the defendant two years to divest a plant. When the defendant did not comply, the court amended the decree to create trusts to sell the plant. 565 F.2d at 565. The defendant's failure to fulfill its

obligations made "the trust orders necessary extensions of the consent decree," *id.* at 566, even though the decree had not provided procedures for the situation in which the plant was not sold within the specified time.

■■■ Application of the "necessary extensions" analysis of *United Foam* and the "modern standard" for allowing modification of consent decrees to the facts of this case make it evident that the district court did not abuse its discretion in this case. We hold that where necessary procedural provisions are absent from a consent decree, the supervising court has wide discretion to amend the decree to include whatever procedures are required for its efficient operation.[2]

■■■ Caltrans argues, however, that despite the silence of the decree, there was no actual gap because the statutory and common law rights of appointing agencies supply the necessary procedures. Interpretation of a consent decree is a matter of law reviewed *de novo.* *Vertex Distributing, Inc. v. Falcon Foam Plastics, Inc.,* 689 F.2d 885, 892 (9th Cir.1982); *Kittitas Reclamation District v. Sunnyside Valley Irrigation District,* 626 F.2d 95, 98 (9th Cir. 1980), *cert. denied,* 449 U.S. 1079, 101 S.Ct. 861, 66 L.Ed.2d 802 (1981).

Caltrans argues that Federal and California law provide that, in the absence of any provision to the contrary, the party that appoints an official has authority to remove the official. *See Harnett v. Ulett,* 466 F.2d 113, 117 (8th Cir.1972); Cal.Gov't.Code § 1301 (West 1980); *Brown v. Superior Court of Mendocino County,* 15 Cal.3d 52, 55, 538 P.2d 1137, 1138, 123 Cal.Rptr. 377, 378 (1975). *See also* Cal.Corp.Code

§ 5222(f) (West Supp.1986) (same principle applies to non-profit corporations). Caltrans, however, points to no authority holding that statutory or common law appointment rights apply to an entity that is created and governed by a consent decree.

Caltrans also points out that CFAAC's by-laws specifically provide for limited terms for, and removal of, CFAAC members. It suggests that these provisions establish that when the decree was filed all parties assumed that the appointing authorities had removal power.[3] In light of the district court's extensive experience with the case and the decree, we should give special deference to its conclusions about the meaning of the decree. *See Vertex Distributing,* 689 F.2d at 893. We respect the court's conclusion that the decree is silent as to the mechanisms for replacement.

■■■ Caltrans also argues that under the terms of the consent decree the district court had no power to modify the decree in the absence of express a request to do so. It claims that the parties requested interpretation, not modification. We disagree. Appellees' motion to interpret the decree contains a request for modification. The proposed order "establishes" a procedure for replacing committee members that would modify the decree. The district court could reasonably have interpreted the motion as requesting modification and acted on it pursuant to the terms of the decree. In any event, even in the absence of express authorization in the decree or request from the parties, the power to modify in appropriate circumstances is inherent in the equity jurisdiction of the court. *Swift,* 286 U.S. at 114, 52 S.Ct. at 462.

2. Caltrans claims that there are no factual findings to support the modification. The district court found that the decree did not address the key issue. *No other findings were necessary.* In any event, Caltrans never requested an evidentiary hearing; it cannot complain on appeal that the factual support for the modification was insufficient.

3. Caltrans also relies on *Firefighter's Local Union No. 1784 v. Stotts,* 467 U.S. 561, 104 S.Ct.

2576, 81 L.Ed.2d 483 (1984), where the Supreme Court refused to infer that an existing seniority system was altered by a consent decree that was silent on the relevant issue. *Firefighter's* does not help Caltrans. In that case, *pre-existing* third party rights were being affected by the "interpretation" of the decree. *See* 104 S.Ct. at 2586. Here, the rights of the appointing authorities all stem from the decree itself.

## II. The Substance of the Modifications

Caltrans claims that even if the district court could modify the decree, the specific modifications it made were improper. It argues that the modifications contravene the purpose of CFAAC and that the court, in dealing with what is essentially a contract, should have attempted to modify in a way that was closer to the expectations of the parties.

Caltrans asserts that CFAAC is a representative body and its purpose is to obtain input into the affirmative action process from all segments of the community. Appellees assert that it is a watchdog committee that must be independent from political pressures. CFAAC's review functions as outlined in the consent decree are perfectly consistent with both parties' views of its purpose. The district court's modification is an attempt at a Solomon-like judgment, accommodating both viewpoints.

■ Caltrans is right that consent decrees are treated much like contracts, *see Vertex Distributing*, 689 F.2d at 892, and that the court in making modifications should consider the original expectations of the parties. We think the court has done that. The judge exercised his discretion to effect a compromise between the positions of the parties. It is inevitable that a compromise will be received more favorably by one side than the other. We do not find an abuse of discretion in the district court's resolution of the dispute in this case.

AFFIRMED.