1 F.3d 1246
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 BULL RUN COALITION, et al., Plaintiff-Appellee,
v.
William K. REILLY, Administrator of the United States
Environmental Protection Agency, Defendant-Appellant.
 No. 91-36141.
 United States Court of Appeals, Ninth Circuit.
 Submitted July 16, 1993.*
Decided July 29, 1993.
 
 Before FARRIS and THOMPSON, Circuit Judges, and HARDY, District Judge.**
 MEMORANDUM***
 FACTS AND PROCEEDINGS
 Section 1412(b) of the Safe Drinking Water Act, 42 U.S.C. 300g-1(b) ("SDWA" or "the Act"), set deadlines which required the Administrator of the Environmental Protection Agency ("Administrator") to publish maximum contaminant level goals by June 19, 1988 regarding 40 listed contaminants. When the Administrator failed to do so, plaintiff Bull Run Coalition ("Coalition") filed suit on September 29, 1988 to compel that rulemaking under the citizen-suit provision of the Act, section 1449, 42 U.S.C. Sec. 300j-8.
 On January 4, 1989, defendant Environmental Protection Agency ("EPA") tendered an offer pursuant to Federal Rule of Civil Procedure 68 to have judgment entered against it in accordance with the terms of a proposed consent decree. That offer was accepted by the Coalition, and the proposed consent decree was approved without change by the district court and filed February 14, 1989.
 The consent decree set a deadline for proposed rulemaking of April 30, 1989, with final rulemaking to be accomplished by December 31, 1990. The consent decree also provided that the district court would retain jurisdiction to hear petitions by either party for enforcement, implementation, or modification of the decree. Finally, paragraph 5 of the consent decree stated:
 Reasonable costs of litigation, as defined by SDWA section 1449(d), 42 U.S.C. Sec. 300j-8(d), accrued as of the date of defendants' offer of judgment was made pursuant to Federal Rule of Civil Procedure 68 shall be awarded to plaintiffs. (emphasis added).
 On March 16, 1989, the Coalition petitioned the district court for an award of attorney fees ($17,990.50) and expenses ($428.62) in the total amount of $18,419.12. The petition included a request for fees incurred for work performed prior to the EPA's offer (118.5 hours), as well as for fees incurred post-offer which were primarily expended preparing the fee petition (198.5 hours).
 District Court Judge Owen M. Panner reviewed the fee petition and the EPA's opposition, and issued an opinion on August 21, 1989. Judge Panner granted the Coalition's petition as to litigation costs incurred prior to January 4, 1989 in the amount of $8,297.50, but denied the Coalition's request for an award of post-offer litigation costs based on the waiver contained in the consent decree. The amount awarded to the Coalition was paid by the EPA.
 In early December 1990, the EPA requested the Coalition's consent to a six-month extension of the December 30, 1990 final rulemaking deadline as to five of the 40 listed contaminants. The Coalition refused. Each party then filed a motion with the district court to modify the consent decree. The EPA's motion sought a six-month extension from December 30, 1990 to June 15, 1991. The Coalition's motion sought a four-month extension to April 15, 1991, as well as modification of paragraph 5 of the consent decree concerning litigation costs. The Coalition sought to substitute the following language in place of existing paragraph 5:
 Reasonable costs of litigation, as defined by the Safe Drinking Water Act Section 1449(d), 42 U.S.C. Sec. 300j-8(d) shall be awarded to plaintiffs.
 Each party opposed the motion filed by the other.
 On March 5, 1991, District Judge Robert E. Jones heard the matters by telephone, and issued a minute order. The EPA prevailed on its requested extension to June 15, 1991.
 This appeal revolves around the modification to paragraph 5 of the consent decree, and Judge Jones's allowance of litigation costs (both those previously denied and additional fees and costs incurred in opposing the EPA's requested extension). Judge Jones's May 8, 1991 order provides that the Coalition is allowed to file a petition for supplemental fees for the period January 3, 1989 to May 20, 1991. This at least implicitly grants the Coalition's requested modification of paragraph 5 because the consent decree as originally entered provided that the Coalition was only entitled to fees incurred prior to January 4, 1989, and the Coalition had already been paid for those fees.
 The Coalition filed its supplemental petition for costs of litigation on May 20, 1991 seeking a total of $11,391.14 in fees and $295.67 in costs, for the period January 3, 1989 to May 20, 1991. This amount included $3,008.50 in new monitoring fees; the balance represented previously denied fees incurred in the preparation of the original fee petition. In response to the EPA's opposition, the Coalition filed a reply on July 3, 1991, increasing the total request for fees expended to $13,511.64, covering time expended on the original fee work, the monitoring work, and subsequent fee petition work.
 In the interim, the EPA filed a motion for reconsideration of Judge Jones's March 5, 1991 order, seeking to reinstate the original language of paragraph 5 of the consent decree limiting fees to those incurred pre-offer, or in the alternative, to award the Coalition fees only for the periods before January 3, 1989 and after December 5, 1990, the date on which the Coalition's counsel were first contacted by the EPA regarding the EPA's requested extension.
 On August 19, 1991, Judge Jones signed an order granting the Coalition's petition for supplemental fees, which reads in pertinent part:
 The court has evaluated plaintiffs' request for additional attorney fees. Although the defense has raised numerous objections to plaintiffs' petition, the court is convinced that all of the time expended by Mr. Sorenson and his associates was justified, productive, and reasonable. Plaintiff is allowed fees in the sum of $13,511.64 and unpaid expenses litigation [sic] of $295.37, totaling $13,807.31.
 The judgment on that order was entered on August 20, 1991. The EPA's notice of appeal was timely filed on October 18, 1991. We have jurisdiction under 28 U.S.C. Sec. 1291, and we reverse.
 DISCUSSION
 A. Modification of Consent Decree Under Federal Rule of Civil Procedure 60(b)
 A district court has authority, under Federal Rule of Civil Procedure 60(b), to modify a final judgment, including one entered pursuant to a consent decree. We review the exercise of this authority for an abuse of discretion. Transgro, Inc. v. AjacTransmission Parts Corp., 911 F.2d 363, 365 (9th Cir.1990); Keith v. Volpe, 784 F.2d 1457, 1459 (9th Cir.1986).
 The district court's authority is not unlimited. Modification can be granted only under certain specified conditions, including a showing that it is "no longer equitable that the judgment should have prospective application...." Fed.R.Civ.P. 60(b)(5). Modification will be allowed under Rule 60(b)(5) where there has been a change in law or in fact which makes the judgment inequitable. See System Federation No. 91, Ry. Emp. Dept. v. Wright, 364 U.S. 642, 647 (1961). Consent decrees are much like contracts and the court should consider the original expectations and intent of the parties in making decisions on modifications. Keith v. Volpe, 784 F.2d 1457, 1462 (9th Cir.1986).
 Judge Panner's order was based on the express waiver in the consent decree, which was voluntarily accepted by the Coalition. Judge Panner looked to the plain language of both the consent decree and Federal Rule of Civil Procedure 68. The order specifically rejected the Coalition's argument that the waiver in the consent decree was ambiguous. It also rejected the Coalition's contention that the consent decree did not encompass a waiver of fees under the Equal Access to Justice Act. Judge Panner expressly stated that the Coalition had cited no injustice, fraud, or any other reason which would entitle it to relief from the express waiver contained in the consent decree under Federal Rule of Civil Procedure 60. Finally, even though he recognized that it was unnecessary in light of his ruling, Judge Panner stated he felt compelled to comment on the reasonableness of the Coalition's counsel's hours for post-offer work and found them "grossly disproportionate to the ... hours it took to prevail" and stated "[e]ven if plaintiffs were entitled to an award for post-offer work, I would find the amount they request unreasonable."
 The Coalition has demonstrated no change in the facts or law which made removal of the waiver in the original consent decree equitable. Judge Jones's order of August 19, 1991 provides no guidance as to what new facts were considered significant enough to support the modification. No "significant change of fact or law" supported modification of Judge Panner's order. Accordingly, we hold that the modification of the district court's earlier order was an abuse of discretion.
 B. Fees for Monitoring Activities
 Nevertheless, the Coalition contends independent grounds support an award of fees for its monitoring activity. It argues new facts, not necessarily in existence at the time the consent decree was accepted, arose because the EPA requested an extension for final rulemaking as to five of the 40 listed contaminants. But it stretches common sense to say that the Coalition could not have anticipated that such monitoring might be necessary to enforce the EPA's continuing obligations under the consent decree when it waived post-settlement fees originally. Substantial authority existed at the time of the Coalition's acceptance of the consent decree providing that subsequent monitoring of a consent decree is a compensable activity for which counsel is entitled to a reasonable fee. See, e.g., Keith v. Volpe, 833 F.2d 850, 855 (9th Cir.1987). Thus the waiver of post-offer fees covers subsequent monitoring costs as well, and modification of the district court's earlier order to allow those costs would be unwarranted for the reasons discussed above.
 Even assuming the modification as to monitoring fees was permissible, allowance of monitoring costs and costs related to the supplemental fee petition was not "appropriate" under section 1449 of the Act, 42 U.S.C. Sec. 300j-8(d), which provides:
 The court, in issuing any final order in any action brought under subsection (a) of this section, may award costs of litigation (including reasonable attorney and expert witness fees) to any party whenever the court determines such an award is appropriate.
 The Supreme Court has determined that "absent some degree of success on the merits by the claimant, it is not 'appropriate' for a federal court to award attorney's fees...." Ruckelshaus v. Sierra Club, 463 U.S. 680, 682 (1983).[1]
 Following Ruckelshaus, we addressed the issue of "appropriateness" in Carson-Truckee Water Conservancy District v. Secretary, 748 F.2d 523 (9th Cir.1984), cert. denied, 471 U.S. 1065 (1985), and held:
 Nothing in Ruckelshaus suggests that the Court meant to reject the rule that, under the "when appropriate" standard, an eligible party must make a substantial contribution to the goals of a statute to be entitled to attorneys fees.
 Id. at 526 (emphasis added).
 The Coalition contends that by virtue of its monitoring activities it has made a substantial contribution to the goals of the statute and is thus entitled to an award of litigation costs for those activities. The intent of fee-shifting statutes such as that contained in the SDWA militates against this contention.
 Fee-shifting statutes such as the one at issue here were created by Congress to "enable private parties to obtain legal help in seeking redress for injuries resulting from the actual or threatened violation of specific federal laws" and not "as a form of economic relief to improve the financial lot of attorneys...." Pennsylvania v. Delaware Valley Citizens' Council, 478 U.S. 546, 565 (1986). Fee-shifting statutes cannot be interpreted so as to provide an incentive to attorneys to prolong litigation or make unjustified, meritless objections with the comfort of knowing that their activities, successful or not, will be rewarded.
 While it is undisputed that the Coalition's original suit and the entry of the consent decree constituted success on the merits and furthered the goals of the statute, the same cannot be said of its opposition to the EPA's requested extension. The Coalition's "opposition" was unsuccessful; the EPA was granted the requested extension. Accordingly, an award of litigation costs for time expended by the Coalition's counsel in opposing the EPA's requested extension and preparation of a supplemental fee petition was not "appropriate" under 42 U.S.C. Sec. 300j-8(d).
 C. Fees Under Equal Access to Justice Act
 
 
 1
 Finally, the Coalition argues that even if it was not entitled to fees under the SDWA because of the waiver in the consent decree, it is entitled to fees under the Equal Access to Justice Act, 28 U.S.C. Sec. 2412(d) ("EAJA"). To support this contention the Coalition relies on Oregon Natural Resources Council v. U.S. Forest Service, 834 F.2d 842 (9th Cir.1987), in which we held that the plaintiffs were entitled to proceed under the Administrative Procedure Act, 5 U.S.C. 702, to enforce violations under the Clean Water Act. By doing so, fees became available under the EAJA.
 
 
 2
 Oregon Natural Resources Council and the present case are factually distinguishable. In Oregon Natural Resources Council, the plaintiffs could not enforce the type of violations at issue there under the citizen-suit provision of the Clean Water Act and, therefore, had no "exclusive and comprehensive remedy in the citizen suit provisions of the Act...." Id. at 851. Thus, while we allowed the plaintiffs there to proceed under the APA, we specifically stated:
 
 
 3
 This decision should not be interpreted to suggest that plaintiffs seeking relief under the CWA may circumvent the notice requirement of the citizen suit provision by resorting to the APA. (citations omitted). Where plaintiffs may otherwise proceed under the citizen suit provision, they should not be allowed to bypass the explicit requirements of the Act established by Congress through resort to ... the APA (citations omitted).
 
 
 4
 Id. at 851.
 
 
 5
 Thus, only the citizen-suit provisions of the SDWA are available to the Coalition here.
 
 
 6
 In addition, because EAJA uses a "prevailing party" standard for the award of fees,[2] litigation costs generated by the Coalition's counsel in opposing the EPA's requested extension and in preparing the supplemental fee petition would be unavailable because the Coalition failed to prevail in that exercise.
 
 
 7
 In summary, we hold that the district court abused its discretion in modifying its previous order; that the Coalition failed to prevail on its opposition to the EPA's requested extension, and thus, was not entitled to fees for its monitoring work; and that the EAJA does not provide an alternative basis for recovery of attorney fees.
 
 
 8
 REVERSED.
 
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 *
 The panel unanimously finds this case suitable for disposition without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 Hon. Charles L. Hardy, Senior United States District Judge for the District of Arizona, sitting by designation
 
 
 [1]
 Although Ruckelshaus involved a fee claim under section 307(f) of the Clean Air Act, the Court noted that sixteen federal statutes and section 304(d) of the Clean Air Act "contain provisions for awards of attorney's fees identical to Sec. 307(f)", and specifically referred to the fee provisions of the Safe Drinking Water Act, 42 U.S.C. Sec. 300j-8(d), at issue here. Ruckelshaus 463 U.S. at 682, n. 1
 
 
 [2]
 28 U.S.C. Sec. 2412(d) provides in pertinent part: "Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, ... incurred by that party in any civil action ... brought by or against the United States...." (emphasis added)