EARTH ISLAND INSTITUTE, INC., Donald May, and Dave Jeffries, Plaintiffs,

v.

SOUTHERN CALIFORNIA EDISON, Defendant.

No. CIV. 90CV1535–B(JFS).

United States District Court, S.D. California.

Aug. 17, 2001.

Joshua R. Floum, Legal Strategies Group, Emeryville, CA, for Earth Island Institute, Donald May, Dave Jeffries, plaintiffs.

Douglas P. Ditonto and Nino J. Mascolo, Southern California Edison, Rosemead, CA, for Southern California Edison Company, defendants.

## ORDER GRANTING JOINT MOTION TO AMEND CONSENT DECREE [247–1]

STIVEN, United States Magistrate Judge.

### I. INTRODUCTION

On June 7, 2001, Plaintiffs Earth Island Institute ("Earth Island"), Donald May

and David Jeffries (collectively "Plaintiffs"), together with Defendant Southern California Edison Company ("SCE"), filed a joint motion to amend the existing Consent Decree in this matter, wherein the parties requested that the Court replace the existing Section III.A. of the Consent Decree with a new Section III.A. The parties contend their revised Section III.A. is designed to accomplish effective wetlands restoration in the Southern California area as contemplated by the original Consent Decree.

On July 5, 2001, at 3:30 p.m., the Court heard oral argument on the parties' joint motion.[1] This Court has reviewed all of the documents submitted in support of this motion and attached exhibits and hereby **GRANTS** the joint motion to amend the Consent Decree.

## II. BACKGROUND

Originally filed in 1990, this case arose out of Defendant SCE's operation of the San Onofre Nuclear Generating Station ("SONGS"). Alleging nuisance and violations of the Federal Water Pollution Control Act ("Clean Water Act"), 33 U.S.C. §§ 1251 et seq. (West 1986 & Supp.2001), Plaintiffs originally sought declaratory and injunctive relief, the imposition of statutory and civil penalties, other compensatory and punitive damages, the establishment of an environmental trust fund, and attorneys' fees and costs. *See Earth Island Institute v. S. Cal. Edison Co.,* 838 F.Supp. 458, 460 (S.D.Cal.1993). Specifically, Plaintiffs contend that SCE violated the Clean Water Act by discharging certain substances into the Pacific Ocean from its SONGS facility.

In August, 1992, the parties arrived at a four-part settlement that provided, *inter alia,* that SCE would spend $7.5 million on the acquisition and restoration of wetlands in the San Dieguito lagoon and river valley near Del Mar, California. On April 19 and 21, 1993, the Hon. Rudi M. Brewster, United States District Judge, heard Plaintiffs' motion for approval of the settlement and consent decree, and on June 14, 1993, issued an Order granting Plaintiffs' motion. Specifically, and as pertains to the instant motion, Section III.A. of the original Consent Decree requires SCE to acquire additional acreage, or the right to restore additional acreage, adjacent to or near the acreage previously acquired (and to be restored) under another restoration project in the San Dieguito area.[2] Thus, the restoration project described Section III.A. has come to be known as the "Additional Acreage" project and at the time the Consent Decree was entered into the cost for acquisition and restoration was valued at approximately $7.5 million.[3]

SCE agreed to begin implementation of the Additional Acreage restoration project

---

1. The parties previously consented to having this matter heard by the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). (*See* docket no. 258-1.)

2. As part of its permit issued to SONGS, the California Coastal Commission ("CCC") required SCE to restore 150 acres of wetlands in the San Dieguito area. That restoration project is presently pending, but the necessary approvals to begin work have not yet been obtained.

3. Pursuant to Section III.A.3. of the Consent Decree, the additional acreage to be restored was to be determined by the following formula:

the number of acres (and portions thereof, if applicable) shall be equal to $7,500,000.00 divided by the sum of (i) the average actual per-acre cost to acquire, and any right to restore, any Additional Acreage (which cost shall not be unreasonable), plus (ii) the average, estimated per-acre cost for the restoration work (not including monitoring costs) at the San Dieguito wetlands

within five days of the effective date of the Consent Decree, and it was originally anticipated that the restoration would be fully accomplished within two to three years thereafter. However, and despite the fact that in 1996 the California Public Utilities Commission permitted SCE to recover from ratepayers approximately $60 million for the entire wetlands restoration project, including the $7.5 million called out for the Additional Acreage restoration specifically contemplated by the Consent Decree, as late as December of 1997 SCE had yet to begin successful implementation the Additional Acreage project. Consequently, on December 17, 1997, and after several attempts at arbitration, the undersigned Magistrate Judge issued an Order directing SCE to set up, establish or otherwise make available a separate fund specifically designated for the Additional Acreage restoration project contemplated by Section III.A. of the Consent Decree. The undersigned further ordered that the fund consist of $7.5 million, plus interest at the rate of 5.25% per annum, compounding monthly and accruing from May 23, 1996, and continuing to accrue until the fund is fully expended for its intended purpose (or as the parties may otherwise agree or the Court may otherwise order).[4] The Court ordered that the fund be established no later than December 31, 1997. The Court projected that SCE would be in a position to go forward with the actual implementation of the Additional Acreage restoration plan no later than January 1, 1999 and, as

such, ordered SCE to submit quarterly reports to the Court during the forthcoming year indicating the progress made toward said implementation. Subsequent Orders from this Court extended the period of time during which SCE would submit periodic reports.

From April 30, 1998 to September 1, 2000, SCE duly submitted periodic status reports to the Court documenting its efforts to comply with Section III.A. of the Consent Decree, i.e. efforts at determining appropriate locations for wetlands restoration, conducting cost analyses, obtaining the requisite environmental impact studies, reports and agency approvals, and, most importantly, the submission of a Final Restoration Plan to the California Coastal Commission for approval. Further, each report provided a status of the amount of funds then present in the separate fund the Court ordered SCE to establish including interest accrued as of that time. As of the date of the final status report submitted on September 1, 2000, SCE had yet to present a Final Restoration Plan to the California Costal Commission as required by the Consent Decree. Moreover, it was discovered that the "fund" SCE established was not really a fund at all but, rather, a mere internal accounting measure. In short, Defendant had not physically segregated any funds whatsoever into a separate account.

On January 30, 2001, Plaintiff Earth Island Institute filed a motion to amend the

---

being undertaken pursuant to the Coastal Commission decision (as reasonably estimated by Edison to the Coastal Commission as of the date of the final Restoration Plan is submitted to the Coastal Commission for approval); provided, however, that [Plaintiffs retain] the right to challenge all aspects of these calculations pursuant to the dispute resolution procedures specified in Section II.H. of this Consent Decree.

Consent Decree at 8.

4. Following mediation on May 22, 1996, mediator Michael E. Quinton recommended that $7.5 million, plus interest, be set aside, with interest compounding annually until the funds are expended for their intended purpose.

Consent Decree, which was opposed both by the remaining Plaintiffs, Donald May and David Jeffries, and by Defendant SCE. Generally, Earth Island sought an amendment of the original Consent Decree that would (1) transfer the monies represented in the fund to Earth Island who would in turn administer the funds to restore wetlands, the location of which Earth Island would determine in its somewhat fettered discretion, or, in the alternative, (2) deem the funds held in a constructive trust by SCE relating back to December 17, 1997. The Court heard oral argument from all parties on February 27, 2001, and issued an Interim Order on March 1, 2001, directing the parties to further brief the constructive trust issue. On March 23, 2001, the Court issued an Order Imposing Constructive Trust holding that the funds are subject to a constructive trust relating back to December 17, 1997, and requiring SCE to account for and keep the funds in a separate interest-bearing account. According to SCE's most recent calculation, on April 1, 2001, the amount held in the constructive trust totaled $9,713,640.00, and it presently continues to accrue interest at the rate of 5.25% compounded monthly.

With the Court's assistance, the parties continued to negotiate the terms of a modified consent decree under which the original intent of the Consent Decree could effectively be implemented, which negotiations culminated in the filing of the instant motion.

## III. DISCUSSION

### A. *The Proposed Amendment*

In their joint motion, the parties seek to modify the Consent Decree to mandate that the over $9.7 million in dedicated funds, now protected by the Order Imposing Constructive Trust, not be limited to the Additional Acreage at San Dieguito, but rather be directed to other specific, high priority wetlands restoration projects in Southern California. Such funds are now sitting dormant in a constructive trust and, the parties maintain, are therefore not being utilized to carry out the parties' clear intent to restore Southern California wetlands, the very purpose of the original Consent Decree.

As of April 1, 2001, the constructive trust contained $9,713,640.00 and it continues to accrue interest at an annual rate of 5.25% compounded monthly. Under the proposed amendment, SCE will deposit the majority of the funds, in equal amounts, into two separate Wetland Restoration Trust Funds on or before December 1, 2001. One fund will be administered by Plaintiff Earth Island at Merrill Lynch. The other fund will be administered by California Earth Corps, Inc. ("Earth Corps"), an environmental organization founded by Plaintiffs May and Jeffries, at Farmers and Merchants Bank in Long Beach, California.[5] Under this arrangement, Earth Island and Earth Corps will allocate the funds to specific restoration projects designated and approved by the Southern California Wetlands Recovery

---

**5.** At the time of filing the instant motion, Earth Corps intended to administer the funds at Washington Mutual, but Plaintiff May indicated during oral argument a desire by Earth Corps to change banks, which neither Earth Island nor SCE opposed. Subsequently, im-mediately following the hearing on July 5, 2001, and under the approval of this Court, the parties effectively changed Earth Corps' bank designation from Washington Mutual to Farmers and Merchants Bank by appropriate interlineation.

Project ("Recovery Project") in its annual Work Plans.[6] The specific terms of the proposed amendment dictate that Earth Island and Earth Corps must designate at least 33% of the funds in their respective accounts for use on projects appearing on the Recovery Project's 2001–2002 Work Plan, and all of the remaining undesignated funds for use on projects listed on Work Plans as they may be developed through June 1, 2004. Any funds remaining after June 1, 2004 shall be allocated at the sole discretion of the Recovery Project. Under this arrangement, all funds must actually be spent within five years (by June 1, 2006) or they shall be released to the California Coastal Conservancy for wetlands restoration projects in Southern California.

The parties maintain they have included special safeguards in their proposed amendment to ensure that the funds are subject to strict controls on how they are allocated and administered. (*See* Proposed Amendment, ¶ B.) Before any funds may be withdrawn, the Costal Conservancy must make a written request to the appropriate institution that the payment be made as designated by Earth Island and/or Earth Corps. The payments cannot be issued without Earth Island and/or Earth Corps first identifying the specific project on the Work Plan, the appropriate payee, and the amount of funding sought. The amendment limits administrative fees to 2% of each fund's annual balance and requires reasonable documentation for reimbursement. *Id.* at ¶ E. Earth Island and Earth Corps must also provide annual audits of their respective accounts. *Id.* at ¶ F.

The proposed amendment also provides for an irrevocable offer by SCE to dedicate real property; specifically, the amendment provides that in exchange for a $1.8 million credit against the constructive trust, SCE will grant an irrevocable offer to dedicate title to certain real property (the "Los Cerritos Property") to the California Coastal Conservancy to facilitate wetlands restoration in that area.[7]

Lastly, the amendment contains provisions for payment of attorneys' fees by SCE to the Golden Gate University School of Law Environmental Law and Justice Clinic, and Legal Strategies Group, who have provided legal services in this matter to some or all of the named Plaintiffs.[8]

6. The Recovery Project is a partnership of seventeen federal and state agencies, founded in 1997 to provide an integrated and comprehensive approach to preserving Southern California wetlands. Working in concert with businesses and non-profit organizations, the Recovery Project develops annual Work Plans which prioritize specific projects for restoration of Southern California wetlands.

7. The offer to dedicate is attached to the joint motion as Exhibit C and was negotiated with SCE directly by the Coastal Conservancy.

8. This Court has, concurrently with this Order, (1) granted Plaintiff Earth Island's motion for attorneys' fees and awarded attorneys fees in the amount of $255,393.89 to Earth Island's counsel, Legal Strategies Group, and,

(2) pursuant to the Stipulation and Order to Amend Consent Decree also filed concurrently with this Order, approved payment of attorneys' fees to the Golden Gate University School of Law Environmental Law and Justice Clinic in the amount of $46,500.00. Payment of these attorneys' fees will be made from the amount presently existing in the constructive trust pursuant to the schedule set forth in Exhibit A to the Stipulation and Order to Amend Consent Decree. Previously, Judge Brewster awarded attorneys' fees in the amount of $1,408,594.84 to the law firm of Milberg, Weiss, Bershad, Specthrie and Lerach on November 19, 1993, who at that time represented all of the named Plaintiffs herein. Subsequently, on February 8, 2000 and March 10, 2000 this Court awarded supplemental attorneys' fees in a total amount of

## B. *The Court Is Authorized To Modify The Consent Decree*

■ Undeniably, this Court has broad authority to amend or modify the Consent Decree. The Court's power to modify the Consent Decree is derived from principles of equity and exists independent from any express authorization within the Decree or the parties' request. *Keith v. Volpe,* 784 F.2d 1457, 1461 (9th Cir.1986). Authority to modify the Consent Decree also stems from Federal Rule of Civil Procedure 60(b), which provides for relief from a judgment when "it is no longer equitable that the judgment should have prospective application ... [or] for any other reason justifying relief from the operation of the judgment." Fed.R.Civ.P. 60(b)(5)-(6) (West 2001). *See also, Rufo v. Inmates of Suffolk County Jail,* 502 U.S. 367, 383, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992). Moreover, the Decree's own dispute resolution provisions, in combination with the Court's duty to safeguard the public interest where environmental harm is at stake, support the Court's authority to modify the Consent Decree. (*See* Order Regarding Establishment of Fund and Interest.) Modification of the decree is particularly important where, as here, " 'a better appreciation of the facts in light of experience indicates that the decree is not properly adapted to accomplishing its pur-

poses.' " *Keith v. Volpe,* 784 F.2d at 1460 (quoting *King–Seeley Thermos Co. v. Aladdin Industries,* 418 F.2d 31, 35 (2nd Cir.1969)).

In an Order dated December 17, 1997, this Court determined that a significant change in circumstances, namely the delay in implementing wetlands restoration under the original Consent Decree, justified a modification. (Order Regarding Establishment of Fund and Interest at 8 (citing *Rufo,* 502 U.S. at 393, 112 S.Ct. 748)). In that same Order, the Court also expressly reserved judgment regarding other or further relief to be granted. (*Id.* at 4 n. 3, 112 S.Ct. 748.) Various authorities thus support the Court's power to further modify the Consent Decree, particularly in a situation such as the present, described in more detail below, where the modification is necessary to effectively carry out the underlying purpose of the Consent Decree.

## C. *The Proposed Amendment Better Achieves The Purpose Of The Original Consent Decree And Furthers The Public Interest*

■ The parties submit that the Consent Decree, as originally drafted, has been ineffective in accomplishing the core purpose of restoring Southern California wetlands.[9] Indeed, more than eight years

---

$92,843.26 to the Golden Gate University School of Law Environmental Law and Justice Clinic, who had rendered legal services to all of the named Plaintiffs during the course of this litigation. The Court notes that Plaintiffs May and Jeffries filed a substitution of attorney on November 6, 1998, substituting out their counsel of record and substituting themselves in, in a *pro se* capacity.

9. Although a specific site in the San Dieguito area was ultimately chosen by the parties for wetlands restoration, the history of this case reveals a general intent on behalf of the par-

ties to restore wetlands in the broader Southern California area, the very area affected by SCE's operation of the San Onofre Nuclear Generating Station. The San Dieguito area was selected because it was one of several priority restoration sites designated in the Southern California area and because the California Coastal Commission permit issued to SCE in connection with its operation of the nuclear generating station already called for the restoration of 150 acres of wetlands at that location. (*See* discussion at p. 3 *supra.*)

have passed since SCE was required, pursuant to the Stipulation of Settlement and Consent Decree, to dedicate $7.5 million to the restoration of functional wetlands in the San Dieguito area. However, these funds (and accrued interest) remain untapped and, despite the clear intent of the parties, effective wetlands restoration has not been accomplished.[10] The proposed amendment, however, purports to accomplish wetlands restoration beginning immediately, and provides that more than $9 million will be allocated among specific and crucial wetlands restoration projects within the next five years. Such expenditures are certainly in the public interest, as the public will greatly benefit from the immediate allocation of funds to environmental restoration at several sites in Southern California.

The proposed amendment advances the public interest by furthering the purpose of the Clean Water Act, providing necessary funding to restore valuable wetlands. Indeed, a key consideration in evaluating a proposed consent decree under the Clean Water Act is "whether the consent decree is in the public interest and upholds the objectives of the Clean Water Act, the primary of which is 'to restore and maintain the chemical, physical and biological integrity of the Nation's waters.'" *United States v. Telluride Co.*, 849 F.Supp. 1400, 1402–03 (D.Colo.1994) (quoting 33 U.S.C. § 1251(a)). Under the terms of the proposed amendment, the expenditure of more than $9.7 million on crucial wetlands

restoration projects in Southern California would be accomplished within five years. Thus, the Consent Decree, as amended, would better achieve the vital purpose of accomplishing wetlands restoration in a manner that would greatly benefit the public interest.

In addition, the proposed amendment facilitates the effectuation of the annual Work Plans of the Southern California Wetlands Recovery Project. The Recovery Project was founded in 1997 as a partnership of state and federal environmental agencies, working together with local businesses and non-profit organizations, dedicated to acquiring, restoring and enhancing wetlands. Although the Recovery Project develops annual Work Plans prioritizing specific restoration projects, the organization cannot proceed with all of these projects without outside funding. Most recently, as a result of the energy crisis in the state of California there have been serious funding cuts relating to many of these projects. Indeed, Plaintiff Donald May stated at the hearing on this motion that the California Senate recently withdrew $54 million that was to go to the Coastal Conservancy for the Wetlands Recovery Project, a decision which left the agency in a highly precarious financial position. (Transcript at 15). Thus, the immediate allocation of 33% of the funds toward current projects designated on the Recovery Project's current Work Plans would greatly facilitate the restoration efforts.

10. In fact, on November 25, 1998, this Court authorized SCE to expend the sum of $780,000.00 to acquire a piece of property in the San Dieguito wetlands area known as the "Villages Property." In turn, SCE was allowed to deduct $780,000.00 from the $7.5 million fund it was supposed to have established under this Court's Order of December 17, 1997. With the modification of the Consent Decree proposed by the parties, and approved by this Order, SCE will retain title to that parcel of land, but the sums expended to acquire it will be restored to the funds referenced above, at pp. 6–7, to be allocated as described herein. Thus, the present valuation of the fund at $9,713,640.00 includes a recoupment of the previous expenditure of $780,000.00 by SCE on the Villages Property.

Notably, a review of the final Environmental Impact Report/Environmental Impact Survey and SCE's most recent draft restoration plan reveals a substantial doubt as to the number of "additional acres" of wetlands which might possibly be restored at San Dieguito pursuant to the original Consent Decree.[11] At the time the Decree was entered into, the parties anticipated that approximately 25 to 30 acres of wetlands would be restored under the "Additional Acreage" project. (Order Regarding Establishment of Fund and Interest at 5.) The passage of time has significantly eroded the number of acres that could be acquired and restored with the funds presently existing in the constructive trust. In the environmental documents described above SCE indicates that only 16.55 acres of wetlands would be restored under the formula set forth in existing Section III.A. of the original Consent Decree. (*See* SCE's Wetland Restoration Plan Information and Cost Analysis filed Mar. 29, 2001.)[12] Moreover, even if a restoration of the Additional Acres was presently in economic accord with the intent of the original Consent Decree, a substantial doubt exists as to whether that restoration would be able to be implemented as efficiently and expeditiously as the restoration projects described in the parties' proposed amendment. Joshua Floum, Earth Island's counsel, represented at the hearing on this motion that the Additional Acreage project is still in need of permitting (Transcript at 8), and therefore the implementation of that restoration work remains uncertain.[13]

Plaintiffs further submit that the proposed plan protects the designated funds from potentially drastic effects of SCE's financial instability, in light of the present energy crisis. Although Defendant's counsel stated at the hearing on this motion that SCE's financial difficulties have not hindered its continued efforts to go forward with the restoration at San Dieguito required by California Coastal Commission, Plaintiffs' counsel urged that the proposed amendment would alleviate concerns that the funds, although protected by the constructive trust, would nevertheless disappear if SCE were to declare bankruptcy.

Although the Recovery Project is itself relatively new, eight of its top priority projects to which funds will be allocated pursuant to the amended Consent Decree are projects which were already specifically referenced for priority restoration work in connection with the original Consent Decree. (*See* Transcript at 16.) Thus, not only does the amendment work to better

---

**11.** Furthermore, the San Diego Superior Court has recently ruled that the current Environmental Impact Report/Environmental Impact Survey is inadequate and requires future study and modification before any wetlands restoration work is undertaken at San Dieguito.

**12.** Plaintiffs have long contended that the number of additional acres of functional wetlands actually subject to restoration under SCE's draft plan would be substantially less than 16 acres under the formula in the existing Section III.A. of the Consent Decree.

**13.** During the hearing on the present motion, the Court raised a concern whether the abrogation of the Additional Acreage project would cause material harm to the separate restoration of 150 acres of wetlands in the San Dieguito area required of SCE under its SONGS permit issued by the California Coastal Commission. (*See* discussion at p. 3 *supra*.) During the hearing on the instant motion, Mr. Floum and Nino Mascolo, attorney for SCE, adequately assured the Court that this larger restoration project would not be jeopardized by this amendment. (*See* Transcript at 8–9, 18; *see also* note 11, *supra*.)

carry out the purpose of the Consent Decree, but it also does not seriously change the original intent of the parties.

That the proposed amendment more effectively accomplishes the purpose of restoring wetlands is evidenced by the number of governmental and/or environmental agencies that have either declined to object to its implementation or that have affirmatively endorsed it. On June 12, 2001, this Court issued a Notice of Hearing on Motion to Amend Consent Decree and Offering Opportunity to Comment or Oppose. Among other recipients, the Notice was served on the following entities: the California Coastal Conservancy; the United States Fish and Wildlife Service; the City of Long Beach; the Golden Gate University School of Law Environmental Law and Justice Clinic; the California Coastal Commission; the San Dieguito River Park Joint Powers Authority; the Environment and Natural Resources Division of the United States Department of Justice; and the Southern California Wetlands Recovery Project. Appended to the Notice was a copy of the parties' stipulation and proposed order to amend the Consent Decree, setting forth verbatim the terms of the proposed amendment.

None of the entities upon whom the Notice and proposed order were served submitted an opposition to this Court. Mr. Floum represented at the hearing on this motion that his office had contacted each of the state agencies served with the Notice of Proposed Amendment, and that he is aware of no opposition. (Transcript at 11, 16.) Moreover, Mary Nichols, Chair of the Governing Board of the Southern California Wetlands Recovery Project and Secretary of the California Resources Agency, personally endorsed the proposed amendment in a declaration filed on June 22, 2001. The California Resources Agency is a cabinet level state agency consisting of twenty-one different departments including, *inter alia*, the California Coastal Conservancy, the California Coastal Commission and the Department of Fish and Game. (Transcript at 24.) In addition, James Payne, on behalf of the Environment and Natural Resources Division of the United States Department of Justice, submitted a letter on June 27, 2001, concluding that the terms of the proposed amendment would further the purposes of the Clean Water Act and be consistent with the law and the public interest.

The provision of the proposed amendment providing that SCE will receive $1.8 million in exchange for an offer to dedicate title to the Los Cerritos real property also facilitates the restoration of Southern California wetlands. Dominic Holzhaus appeared at the hearing on behalf of the City of Long Beach and indicated the City supports this provision of the amendment, which will enable the physical transfer and relocation of an existing oil pad in an area of wetlands presently designated for restoration to the new property dedicated by SCE to the Coastal Conservancy. Thus, the dedication of the Los Cerritos property will enable the environmental agencies to remove presently ongoing oil operations within the wetlands site and relocate those operations to a more appropriate location not slated for restoration. (Transcript at 27–28.)

Finally, the provision allowing for the payment of attorneys' fees is consistent with a similar provision contained in the original Consent Decree, and thus is consistent with the parties' original intent in this regard.

In short, the proposed amendment better accomplishes the purpose of the origi-

nal Consent Decree because it provides for the immediate acquisition and expenditure of funds on crucial wetlands restoration projects throughout Southern California. The amendment facilitates the ongoing restoration efforts in the city of Long Beach. It also ensures that the funds which presently exist in the constructive trust will not be endangered by SCE's recent financial difficulties. Moreover, the proposed amendment greatly benefits the efforts of the Southern California Wetlands Recovery Project, a network of environmental agencies that has recently suffered tremendous cuts in funding at the hands of the California Senate. Finally, the proposed amendment advances the public interest by providing for immediate and proactive restoration of crucial wetlands. None of these benefits will be realized if the funds continue to remain dormant within the constructive trust. Accordingly, this Court is persuaded that the proposed amendment better accomplishes the original purpose of the Consent Decree and advances the public interest. Therefore, the parties' joint motion to amend the Consent Decree is hereby **GRANTED.**

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Section III.A. of the original Consent Decree shall be replaced with the amended Section III.A. appearing in the Stipulation and Order to Amend Consent Decree filed concurrently with the instant Order.

**IT IS SO ORDERED.**